Filed 8/13/26  Elizondo v. Livermore Sales and Service CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| EDUARDO ELIZONDO,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>LIVERMORE SALES AND<br>SERVICE, INC.,<br><br>     Defendant and Appellant. | A174408<br><br>(Alameda County<br>Super. Ct. No. 25CV118875) |

Livermore Sales and Service, Inc. (Livermore Toyota) appeals the trial court's denial of its petition to compel arbitration of a lawsuit brought by its former employee, Eduardo Elizondo.  Livermore Toyota contends the trial court erred by finding the arbitration agreement unconscionable and refusing to sever the offending provisions.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In August 2023, Elizondo began working as a parts driver for Livermore Toyota, a car dealership, delivering car parts to various regional Toyota dealerships and collision repair shops.  In August 2024, Elizondo electronically signed the "Handbook Acknowledgment At Will and Arbitration Agreement" (arbitration agreement) underlying this case.

0

*Relevant Arbitration Agreement Provisions*

The arbitration agreement contains all the terms set forth below.

Elizondo and Livermore Toyota agree to pursue "any claims [either party] might have" against either party "that currently exist or that may arise in the future exclusively through binding arbitration."

"Our agreement to arbitrate includes any and all claims which arise out of the employment context or any other interaction/relationship we had, have, or may have in the future. Those claims include, but are not limited to, any claim, dispute, and/or controversy that either party brings against the other (including, but not limited to, any claims of discrimination and harassment, whether they be based on the California Fair Employment and Housing Act, the Americans With Disabilities Act, Title VII of the Civil Rights Act of 1964, as amended, claims pursuant to the California Private Attorneys General Act ('PAGA') unless prohibited by controlling law, as well as all other applicable state or federal laws or regulations) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between [Elizondo] and the Company, as well as any third-party beneficiaries of the Company."

The agreement to arbitrate also encompasses "any claims arising from, related to, or having any relationship or connection whatsoever with [Elizondo's] seeking employment with, employment by, or other association with the Company or third-party beneficiaries, whether based on tort, contract, statute, equity or otherwise." Third-party beneficiaries include "the Company's owners, directors, officers, managers, employees, agents, partners, attorneys, sister-companies, subsidiaries, parent companies, joint-

1

venturers, affiliated persons/entities, independent contractors, and parties affiliated with its employee benefit and health plans."

The sole exceptions to mandated arbitration are claims arising under the National Labor Relations Act (29 U.S.C. § 151 et seq.) brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act (Lab. Code, § 3200 et seq.), Employment Development Department claims, and claims involving sexual assault or harassment.

Elizondo is expressly prohibited from raising claims on behalf of others under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.; PAGA) in any forum: "By signing below, you expressly waive the right to bring a class, collective, representative or PAGA claim (unless prohibited by controlling law) seeking any relief on behalf of others."

No explicit termination date is included and the agreement "may not be changed, altered, revised or modified without a writing signed by the General Manager of the Company"; the final paragraph adds that "an agreement contrary to the foregoing must be entered into, in writing, by both the Owner(s) and/or President of the Company and [Elizondo]."

The arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.; FAA) and contains a severance clause, stating generally that if any portions of the agreement were found to be void or unenforceable, the offending provisions will be removed to make the remainder of the agreement enforceable.

*Complaint and Petition To Compel Arbitration*

In April 2025, Elizondo filed a complaint against Livermore Toyota under PAGA on behalf of himself and other aggrieved employees, alleging the following Labor Code violations: (1) failure to provide lawful meal periods;

(2) failure to permit lawful rest periods; (3) failure to provide accurate itemized wage statements; (4) failure to pay overtime wages; (5) failure to pay minimum wages; (6) failure to timely pay wages; (7) failure to pay all wages upon separation of employment; and (8) failure to reimburse business expenses.

In June 2025, Livermore Toyota petitioned to compel arbitration of Elizondo's individual PAGA claims and to stay proceedings of the representative action pursuant to the arbitration agreement.

Elizondo opposed the petition to compel arbitration on various grounds, including unconscionability. He asserted the arbitration agreement was a procedurally unconscionable contract of adhesion and was substantively unconscionable because, among other bases, its scope and duration are overbroad, it forced him to arbitrate his claims against third parties with no privity of contract, and it prohibited him from bringing representative actions under PAGA. He further contended the unconscionability could not be cured through severance.

*Ruling on Petition To Compel Arbitration*

In September 2025, after holding a hearing, the court found the arbitration agreement unconscionable and denied the petition to compel arbitration. The court found at least minimal procedural unconscionability inherent in the employment relationship as Elizondo lacked a meaningful opportunity to negotiate the terms presented by Livermore Toyota.

The court determined two provisions in the agreement were substantively unconscionable. First, it found the agreement's scope to be "unreasonably broad" because the language subjecting to arbitration any claim " 'which arise[s] out of the employment context *or any other interaction/relationship we had, have or may have in the future'* " (boldface

3

omitted and italics added) is unlimited in duration and not restricted to employment-related matters, relying on *Cook v. University of Southern California* (2024) 102 Cal.App.5th 312 (*Cook*).  Second, it found the waiver of Elizondo's class and PAGA claims " 'unless prohibited by controlling law' " to be unconscionable because the burden is borne by Elizondo to determine whether his claims fall within its terms; further, there is no similar provision that limits claims that might be brought by Livermore Toyota based upon controlling law.

The court declined to sever the unconscionable portions of the agreement.

**DISCUSSION**

Livermore Toyota challenges the trial court's determination that the arbitration agreement is unconscionable, as well as its decision not to sever any unconscionable provisions.  We address each issue in turn and affirm.

## I. The Arbitration Agreement Is Unconscionable

An agreement to submit a controversy to arbitration is valid, enforceable, and irrevocable, except on grounds that exist for the revocation of any contract.  (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).)  As such, generally applicable contract defenses, including unconscionability, may be invoked to invalidate arbitration agreements without running afoul of either the FAA or California law.  (*Ibid.*)

"Unconscionability has both a procedural and a substantive element. [Citation.]  Procedural unconscionability ' "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." ' [Citation.]  ' "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." ' [Citation.]  Both elements

4

must be proven, but they are evaluated on a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required' to find it unenforceable, 'and vice versa.' " (*Haydon v. Elegance at Dublin* (2023) 97 Cal.App.5th 1280, 1287.)

We review the trial court's unconscionability finding de novo as no disputed factual issue bears on our analysis. (*Cook*, *supra*, 102 Cal.App.5th at p. 321.)

## A. Procedural Unconscionability

Procedural unconscionability is generally established by showing the agreement is a contract of adhesion, where a standardized contract drafted by the party with greater bargaining strength is imposed on the other party, leaving the subscribing party with only the option to adhere to the contract or reject it. (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492–493 (*Ramirez*).) Arbitration contracts imposed as a condition of employment are typically adhesive and may include elements of oppression. (*OTO*, *supra*, 8 Cal.5th at pp. 126–127.)

Livermore Toyota concedes the arbitration agreement was offered as a condition of employment, making it a contract of adhesion which "therefore bears some degree of procedural unconscionability . . . ." Elizondo, in turn, attempts to argue this admission itself demonstrates a "much higher" degree of procedural unconscionability than found by the trial court.

The mere fact that the arbitration agreement is a contract of adhesion demonstrates only a low degree of procedural unconscionability. (*Ramirez*, *supra*, 16 Cal.5th at p. 494.) Even so, "the potential for overreaching in the employment context warrants close scrutiny of the contract's terms." (*Ibid*.) As we explain, such scrutiny reveals the arbitration agreement to be substantively unconscionable.

## B. Substantive Unconscionability

Substantive unconscionability is typically found in the employment context when an arbitration agreement is unfairly one-sided in favor of the employer without sufficient justification. (*Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1472–1473.) The doctrine is concerned with terms that are " ' "unreasonably favorable to the more powerful party," ' " which " ' "impair the integrity of the bargaining process or otherwise contravene the public interest or public policy" ' or attempt to impermissibly alter fundamental legal duties," and may include fine-print terms and those that undermine the nondrafting party's reasonable expectations. (*OTO*, *supra*, 8 Cal.5th at p. 130.) Substantive unconscionability as to arbitration " 'is viewed in the context of the rights and remedies that otherwise would have been available to the parties.' " (*Id.* at p. 137.)

The trial court found substantive unconscionability based on the arbitration agreement's overbreadth and its treatment of PAGA claims. Livermore Toyota challenges both findings, which we address below, along with Elizondo's claim that the agreement lacked mutuality.

### 1. Overbreadth in Scope and Duration

Livermore Toyota avers the court erred by concluding the breadth of the arbitration agreement's scope and duration render it substantively unconscionable and that the court improperly relied on *Cook*, *supra*, 102 Cal.App.5th 312 in reaching that determination.[1] We are not convinced.

---

[1] We reject Livermore Toyota's contention that Elizondo waived in the trial court any argument that the arbitration agreement is unconscionable on this basis. Elizondo expressly raised this ground in his opposition to the petition to compel arbitration, asserting the "arbitration agreement is overbroad in scope and time as it applies to claims not arising from Plaintiff's employment and for an unlimited duration of time." Though he cited another

6

In *Cook*, an arbitration agreement between the University of Southern California (USC) and its former employee, Cook, required Cook to arbitrate all claims she had against USC or any of its related entities, " 'whether or not arising out of' " her employment or termination. (*Cook, supra*, 102 Cal.App.5th at p. 321.) The appellate court concluded the agreement was unconscionably broad as it encompassed any claims Cook may have against USC or its related entities, even if they were completely unrelated to her employment, without any legitimate justification. (*Id.* at pp. 324–325.) The court further found the duration of the arbitration agreement unconscionable as it survived indefinitely, including after termination of Cook's employment, and could not be revoked or modified without a written document signed by USC's president. (*Id.* at pp. 325–326.)

Other cases have applied *Cook* to similar arbitration agreements to find them overbroad and substantively unconscionable on the bases that they were likewise not limited to employment-related claims and survived the time of employment. (E.g., *Phan v. Knight Sacramento SU Inc.* (2026) 121 Cal.App.5th 641, 654–655 (*Phan*); *Stoker v. Blue Origin, LLC* (2026) 120 Cal.App.5th 91, 108 (*Stoker*).)

The pertinent portions of the arbitration agreements in *Phan* are *identical* to the arbitration agreement in this case. (*Phan, supra*, 121 Cal.App.5th at pp. 645–646.) In particular, the agreements in both cases require the employees "to pursue 'any claims,' including 'any and all claims which arise out of the employment context or any other interaction/relationship we had, have or may have in the future' against [the employer], and third-party beneficiaries, through binding arbitration." (*Ibid.*)

portion of the agreement as evidence of the overbreadth, he plainly presented the argument below.

7

The third-party beneficiaries included in the agreements in *Phan* are likewise identical to those listed in the arbitration agreement in this case. (*Id.* at p. 646.) The agreements in both cases further subject to arbitration " 'any claims arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, *or other association* with the Company or third-party beneficiaries, whether based on tort, contract, statute, equity or otherwise.' " (*Ibid.*, italics added.)

*Phan* concluded the trial court did not err in applying *Cook* to find the agreements overbroad and unconscionable. (*Phan*, *supra*, 121 Cal.App.5th at pp. 654–655.) The appellate court found there to be "no material difference between the agreement in *Cook* and the Agreements" in *Phan* as "the plain language is so broad that they, like the *Cook* agreement, also encompass all of Phan's claims against [the employer] and its related third parties, whether related to her employment or not" and, "like the agreement in *Cook*, Phan is bound by these terms indefinitely as the Agreements require her to arbitrate all future claims as well." (*Phan*, at p. 654.) Accordingly, *Phan* found the expansive scope of arbitrable claims encompassed by the agreements to be substantively unconscionable. (*Ibid.*)

Here, similarly, the trial court found the agreement to be overbroad based on the exact same language as in *Phan* subjecting to arbitration "any and all claims which arise out of the employment context *or any other interaction/relationship we had, have, or may have in the future*" (italics added), which the trial court found unreasonably required Elizondo to arbitrate claims unrelated to his employment for an unlimited duration. (*Phan*, *supra*, 121 Cal.App.5th at p. 654.) Also like in *Phan*, the agreement here includes claims based on any "other association" with Livermore Toyota

8

or third-party beneficiaries, "whether based on tort, contract, statute, equity or otherwise." (*Ibid*.)

We agree with *Phan* that the arbitration agreement here is not materially different from the agreement in *Cook* and is substantively unconscionable. (*Phan, supra*, 121 Cal.App.5th at pp. 654–655.) Like in *Phan* and *Cook*, the arbitration agreement is overly broad in scope, applying to claims wholly unrelated the employment context, as well as in duration, requiring Elizondo to arbitrate any "future" claims. (*Phan*, at p. 654; *Cook, supra*, 102 Cal.App.5th at pp. 325–326.)

Also as in *Phan*, the arbitration agreement encompasses any claims Elizondo may have against an expansive list of third-party beneficiaries. (*Phan, supra*, 121 Cal.App.5th at p. 654.) Such third parties include not just those working for Livermore Toyota directly but also "agents, partners, attorneys, sister-companies, subsidiaries, parent companies, joint-venturers, affiliated persons/entities, independent contractors, and parties affiliated with its employee benefit and health plans."

Hence, the arbitration agreement could apply to claims based on Elizondo's association with any number of entities or persons having nothing to do with his employment, even going so far as to potentially include, for example, a car manufacturer parts liability claim against Toyota, or a medical liability claim if he happened to be covered by an insurer affiliated with Livermore Toyota's employee health plan. (See, e.g., *Cook, supra*, 102 Cal.App.5th at pp. 318, 325 [agreement's broad scope could encompass claim based on botched surgery in USC hospital or for defamation against USC employee]; *Stoker, supra*, 120 Cal.App.5th at p. 108 [arbitration provision's inclusion of employer Blue Origin's related entities would encompass claims if employee "were to be injured in an automobile accident with another Blue

9

Origin employee years after his employment ended, or if his house were damaged by debris from a Blue Origin rocket"]; cf. *Ayala-Ventura v. Superior Court* (2026) 119 Cal.App.5th 241, 257 [arbitration agreement's scope not unconscionably broad, even if interpreted to apply to claims outside employment context, where employer only provides commercial janitorial services as it is unlikely that a "vast range of claims completely unrelated to [employee]'s employment could arise"].)

In arguing to the contrary, Livermore Toyota asserts the language of the arbitration agreement is distinguishable from *Cook* and is instead akin to the agreement in *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064 (*Little*).[2] However, as explained in *Phan*, despite some similarities in the language, the arbitration agreement in this case "go[es] further" than the one in *Little* because, unlike in *Little* (but like in *Cook*), the scope of arbitrable claims here includes claims unrelated to the employment context. (*Phan*, *supra*, 121 Cal.App.5th at p. 655.)

Livermore Toyota further attempts to distinguish *Cook* by asserting the duration of the agreement here is not indefinite but will instead terminate after a " 'reasonable time,' " relying on *Reigelsperger v. Siller* (2007) 40

---

[2] The relevant portion of the agreement in *Little* stated: " 'I agree that any claim, dispute, or controversy (including, but not limited to, any and all claims of discrimination and harassment) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, and officers, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with, the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act . . . .' " (*Little*, *supra*, 29 Cal.4th at pp. 1069–1070.)

Cal.4th 574, 580 (arbitration agreements without a specified term of duration are terminable at will after a reasonable time). *Cook* rejected a similar argument based on *Reigelsperger*, concluding the agreement's specification that it would survive unless and until Cook and USC's president terminate the agreement in a signed writing amounted to an express term of duration and showed the parties did not contemplate the agreement would be terminable at will. (*Cook, supra*, 102 Cal.App.5th at pp. 325–326.)

Although the agreement here does not expressly state it will survive Elizondo's employment, by its terms, it applies to any claims stemming from any interaction that may arise "in the future." It further provides that any modification of the agreement must be in writing signed by "both the Owner(s) and/or President of the Company" and Elizondo, as Livermore Toyota acknowledges. As in *Cook*, these provisions demonstrate the parties did not intend for the agreement to be terminable at will. In any event, Livermore Toyota does not suggest what a "reasonable time" would be in this context, and we find any ambiguity in the duration of the agreement underscores the unfairness of its provisions in favor of the employer.

Additionally, Livermore Toyota argues *Cook* is preempted by the FAA, asserting the "*Cook* rule" as to overbreadth is specific to arbitration agreements and not generally applicable to all contracts. However, the defense of unconscionability, which *Cook* relied upon, is indisputably applicable to all contracts and does not contravene the FAA or California law when applied in the arbitration context. (*OTO, supra*, 8 Cal.5th at p. 125.) That overbreadth was one of the reasons *Cook* found the agreement to be unconscionable does not mean the court applied an arbitration-specific rule. Rather, *Cook* properly considered the facts of that case and concluded that, when " 'viewed in the context of the rights and remedies that otherwise would

11

have been available to the parties' " (*OTO*, at p. 137), the arbitration agreement was unconscionable as it unfairly required Cook to arbitrate numerous claims, wholly unrelated to her employment, that she would have otherwise been able to bring in court. (See *Cook, supra*, 102 Cal.App.5th at pp. 318, 325.) The same is true of the arbitration agreement in this case, and we find this approach to be consistent with a general application of the defense of unconscionability, which "is inherently fact specific." (*OTO*, at p. 138.)

Finally, we note Livermore Toyota fails to argue that there is any justification for necessitating sending to arbitration any claim Elizondo may have or that may arise in the future, even one entirely unrelated to his employment, which further demonstrates unconscionability. (See *Phan*, *supra*, 121 Cal.App.5th at pp. 655–656 [finding unconscionability after rejecting purported business justifications for breadth of arbitration agreement].)

In sum, the trial court did not err in relying on *Cook* and finding the arbitration agreement unreasonably broad in scope and duration, which we conclude reveals a high degree of substantive unconscionability.

### 2. Lack of Mutuality as to Associated Third Parties

If an agreement singles out certain claims for arbitration, there must be mutuality as to the parties that are required to arbitrate those claims. (*Cook, supra*, 102 Cal.App.5th at pp. 326–328; see *Ramirez, supra*, 16 Cal.5th at p. 495.) In both *Cook* and *Phan*, the lack of such mutuality formed part of the basis for findings of substantive unconscionability; the agreements in those cases required employees to arbitrate their claims against various third parties but did not require those third parties to arbitrate their claims

12

against the employees.  (*Cook,* at pp. 326–328; *Phan*, *supra*, 121 Cal.App.5th at pp. 656–657.)

Elizondo argued in his opposition to the petition to compel arbitration that, beyond being overbroad, the arbitration agreement is "one-sided" because it would force him to arbitrate his claims against third parties "with no privity of contract."  The trial court rejected this argument on the basis that both Elizondo and Livermore Toyota must arbitrate claims against third-party beneficiaries.

However, a lack of mutuality can exist even where the employer agrees to arbitrate its claims against the employee if the agreement provides a significant benefit to third-party beneficiaries (in the form of compelled arbitration) without any reciprocal benefit to the employee and without a legitimate justification.  (*Cook, supra*, 102 Cal.App.5th at pp. 327–328; accord, *Phan*, *supra*, 121 Cal.App.5th at pp. 656–657.)  We conclude the agreement here, which is in relevant parts identical to the one in *Phan* and substantively similar to the one in *Cook*, also lacks mutuality because it requires Elizondo to arbitrate his claims against the many third-party beneficiaries but does not require them to arbitrate claims against him.

Livermore Toyota avers this lack of mutuality is not unconscionable on this basis for three reasons.  First, the nature of its business justifies the inclusion of claims against the third parties "because such entities and individuals are often named as defendants in cases arising out of an employee's employment."  Even if true, Livermore Toyota fails to explain why it justifies the *one-sided* inclusion of third parties without any reciprocal benefit for Elizondo.

Second, Livermore Toyota contends the agreement does not confer any benefit to the listed third parties that they would not already have under

13

contract law. However, as explained in *Cook*, the agreement's inclusion of listed classes of third-party beneficiaries provides a benefit to those third parties by making it easier for them to compel arbitration; they would only have to make a prima facie showing that they fall within one of the classes of beneficiaries in the agreement to do so. (*Cook, supra*, 102 Cal.App.5th at p. 328.) By contrast, it is unlikely Elizondo would be able to meet his burden to compel the third parties to arbitration. (*Ibid.*)

Third, Livermore Toyota contends the FAA preempts invalidation of arbitration agreements that benefit third-party beneficiaries. The sole authority Livermore Toyota cites in support of this argument is *Ramirez, supra*, 16 Cal.5th at page 518, for the proposition that the FAA prohibits disfavoring arbitration agreements compared to other contracts. Though the cited portion of *Ramirez* notes the FAA requires arbitration agreements to be on an equal footing with other contracts, it also reinforces that "it does not contravene the FAA to find that certain provisions of [an] Agreement are unconscionable" and to declare an agreement unenforceable on that basis. (*Ramirez*, at p. 518.) *Ramirez* also demonstrates that lack of mutuality, without any cognizable justification, is a valid ground for finding substantive unconscionability. (*Id.* at pp. 495–500.) Thus, it does not support the conclusion that the FAA preempts invalidating arbitration agreements when, as here, they provide an unjustified, one-sided benefit to third parties associated with the stronger party.

We conclude the lack of mutuality as to the benefit of forced arbitration afforded to third parties associated with Livermore Toyota, without justification, is substantively unconscionable. (See *Cook, supra*, 102 Cal.App.5th at pp. 327–328; *Phan, supra*, 121 Cal.App.5th at pp. 656–657.)

14

### 3. PAGA Waiver

The trial court found the arbitration agreement's treatment of PAGA claims to be substantively unconscionable. Livermore Toyota contends this was error because any waiver of PAGA claims is limited by controlling law pursuant to the terms of the arbitration agreement.

PAGA was enacted to enable employees to enforce the Labor Code as representatives of the Labor and Workforce Development Agency. (*DeMarinis v. Heritage Bank of Commerce* (2023) 98 Cal.App.5th 776, 782–783 (*DeMarinis*).) "The statute 'deputizes an "aggrieved" employee to bring a lawsuit "on behalf of himself or herself and other current or former employees" to recover civil penalties for Labor Code violations that would otherwise be assessed and collected by the state.' " (*Id.* at p. 783.)

"Although the United States Supreme Court has held that class action waivers are enforceable in cases to which the [FAA] applies [citations], the same is not true of representative PAGA actions. As to those actions, 'a predispute categorical waiver of the right to bring a PAGA action is unenforceable.' " (*Stoker*, *supra*, 120 Cal.App.5th at p. 111, quoting *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1117.) Therefore, an arbitration provision purporting to waive an employee's right to bring representative actions, including representative PAGA claims, is substantively unconscionable. (*Stoker*, at p. 112.)

The PAGA provision states Elizondo "expressly waive[s] the right to bring a class, collective, representative or PAGA claim (unless prohibited by controlling law) seeking any relief on behalf of others." The trial court found this "may" be unconscionable by placing the onus on Elizondo to know which claims are properly excluded from arbitration without specificity in its terms. It further found "the unilateral exclusion of PAGA and all class related

15

claims to be problematic and, thus, unconscionable," as well as lacking mutuality as to claims that might be brought by Livermore Toyota.

As an initial matter, contrary to Livermore Toyota's assertion that there is no wholesale PAGA waiver because Elizondo's individual PAGA claims are subject to arbitration, even where "individual PAGA claims [are] expressly subject to arbitration, requiring [him] to completely waive [his] right[] to bring nonindividual PAGA claims in any forum would still constitute a 'wholesale' PAGA waiver that violates public policy . . . ." (*DeMarinis*, *supra*, 98 Cal.App.5th at p. 789.)

Further, to the extent the PAGA provision puts the burden on Elizondo to know whether his PAGA claims are subject to arbitration or waived under controlling law—no easy task in light of the recent developments in federal and state caselaw on the topic (see, e.g., *DeMarinis*, *supra*, 98 Cal.App.5th at pp. 783–786)—it bears at least some degree of substantive unconscionability. For instance, it is unreasonably favorable to the more powerful party (*OTO*, *supra*, 8 Cal.5th at p. 130), as Livermore Toyota would be more likely to understand the controlling law. Further, the lack of specificity in the terms of the PAGA waiver could undermine Elizondo's reasonable expectations as to his rights under the agreement by confusing the issue. (See *ibid.*)

Therefore, we conclude the PAGA waiver provisions reveal at least some degree of substantive unconscionability. When considered in combination with the high degree of substantive unconscionability due to overbreadth in scope and duration (pt. I.B.1., *ante*) and lack of mutuality (pt. I.B.2., *ante*), and the procedural unconscionability present in a contract of adhesion (pt. I.A., *ante*), we conclude the trial court did not err in finding the arbitration agreement unconscionable.

## II.  Trial Court's Refusal to Sever Was Not an Abuse of Discretion

We review the trial court's decision to not sever any unconscionable provisions of the arbitration agreement for abuse of discretion (*Ramirez, supra*, 16 Cal.5th at p. 513) and conclude there was none.

If a trial court finds a contract or any of its provisions to be unconscionable, the court has the discretion to either refuse to enforce the entire agreement, particularly if it is permeated by unconscionability, or to sever or limit the unconscionable portion and enforce the remainder of the contract.  (*Ramirez, supra*, 16 Cal.5th at p. 513.)  Where an arbitration agreement contains multiple unlawful provisions, those " 'multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage,' " which supports a finding that the agreement is permeated by an unlawful purpose.  (*Id.* at p. 515.)

In exercising its discretion, the trial court begins by asking whether the contract can be cured, or whether its central purpose is tainted with illegality.  (*Ramirez, supra*, 16 Cal.5th at p. 516.)  "Even if a contract *can* be cured, the court should also ask whether the unconscionability *should* be cured through severance or restriction because the interests of justice would be furthered by such actions."  (*Ibid.*)  The trial court may consider the deterrent effect of each option in conducting its severance analysis.  (*Id.* at p. 517.)  And where a contract contains a severance clause, the court should take it into account as an expression of the intent of the parties, but such provision cannot divest the court of its discretion.  (*Ibid.*)

The trial court declined to sever the unconscionable portions of the agreement, reasoning that unconscionability permeates the agreement, that severance of any one portion would be insufficient, and that doing so would

17

reward Livermore Toyota with its desired outcome of arbitration without incentivizing it to change its one-sided arbitration agreements used with employees.

We see no abuse of the trial court's discretion in declining to sever the multiple unconscionable provisions after appropriately considering relevant factors, such as whether the arbitration agreement is permeated by unconscionability (*Ramirez, supra,* 16 Cal.5th at p. 513) and the deterrent effect of refusing to enforce the one-sided agreement (*id.* at p. 517).

## DISPOSITION

The order denying Livermore Toyota's petition to compel arbitration is affirmed. Elizondo shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


PETROU, J.


WE CONCUR:


TUCHER, P. J.

RODRÍGUEZ, J.


A174408 / *Elizondo v. Livermore Sales and Service, Inc.*

18